IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOYCE THOMPSON, ) | FILED: JULY 14, 2008 |
| ) | 08CV3985 |
| Plaintiff, ) | JUDGE BUCKLO |
| ) | MAGISTRATE JUDGE DENLOW |
| v. ) | YM |
| ) | |
| CONTINENTAL CASUALTY CO., ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Joyce Thompson by and through her attorneys, Block & Landsman, and for her Complaint against defendant Continental Casualty Co. states as follows:

### NATURE OF THE ACTION

1. This is an action for multiple violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. 1001, *et. seq.*, including defendant's failure to comply with ERISA's procedural requirements, failure to disclose documents and breach of fiduciary duty.

### JURISDICTION

2. This Court has subject matter jurisdiction over the action pursuant to ERISA 502 (e)(1), 29 U.S.C. 1132(e)(1).

3. This Court has further jurisdiction under 28 U.S.C. §1331, as this claim arises under the laws of the United States.

4. The ERISA statute provides, at 29 U.S.C. §1133, a mechanism for administrative or internal appeal of benefit denials. Those avenues of appeal have been exhausted.

1

## VENUE

5. Venue is proper in the Northern District of Illinois pursuant to ERISA 502(e)(2), 29 U.S.C. §1132(e)(2). The CNA Health and Group Benefits Plans and CNA Retirement Plan were administered in the Northern District of Illinois and the breach of the plans occurred in the Northern District of Illinois. Venue is also proper pursuant to 28 U.S.C. §1391.

## PARTIES

6. Plaintiff Joyce Thompson ("Joyce") is a citizen of the state of Illinois who resides at 687 Raintree Court, Carol Stream, Illinois.

7. Defendant Continental Casualty Company ("CNA") is an insurance company existing under the laws of the state of Illinois with its principal place of business in Chicago, Illinois.

## FACTUAL BACKGROUND

8. At all times relevant hereto, CNA sponsored and administered certain employee welfare benefit plans providing benefits to employees and employees' beneficiaries and is a fiduciary of those plans by virtue of that activity within the meaning of ERISA.

9. Included among the employee welfare benefit plans sponsored by CNA is the CNA Retiree Health and Group Benefit Plan (the "Plan"). The Plan is an employee welfare benefit plan within the meaning of ERISA.

10. From 1981 through 1996, Joyce's husband, William Thompson ("William"), was employed by CNA.

11. William was a participant in and beneficiary of the Plan. Joyce was a beneficiary of the Plan within the meaning of ERISA.

2

12. At all times during his employment, William received medical benefits from CNA's group health plan.

13. In January, 1995, William became ill and was unable to work due to his illness. At that time William took short-term disability benefits from CNA.

14. In or about early 1996, at the expiration of William's eligibility for short-term disability benefits, William took long term-disability benefits, which included medical coverage.

15. The section of the Human Resources Manual (the "Manual") dated January 16, 1995 which was in effect at the time of William's long-term disability benefits, stated with respect to medical coverage:

> If you continue to be disabled, you and your covered dependents remain eligible for coverage for a period of 29 months following the date of maximum Short Term Disability benefits are exhausted, until your total disability ends or the covered person is age 65 and becomes eligible for Medicare, whichever comes first. The Company pays for the entire contribution for your coverage during this extension.

A copy of the relevant Manual page is attached hereto as Exhibit A.

16. In February, 1996, William elected to retire. At that time, William was receiving long-term disability benefits.

17. William did not elect to take his pension.

18. Pursuant to the long-term disability provision, William's long-term disability medical coverage should have terminated in or about August, 1998.

19. William continued to be covered by long-term disability medical benefits until his death in February, 1999.

20. William and Joyce paid premiums for long-term disability medical benefits on a quarterly basis until William's death in February, 1999.

21. After Williams death, Joyce began taking a portion of William's pension payments.

22. In October, 2007 Joyce contacted CNA and sought to have her medical benefits provided to her as a widow of a retiree.

23. CNA, by and through its current administrator, Hewitt, verbally denied Joyce's request for medical benefits.

24. On December 2, 2007, Joyce filed a timely appeal of CNA's determination.

25. On January 3, 2008, via written letter, CNA reaffirmed Hewitt's verbal declination of benefits. The letter stated in pertinent part:

**Reason for Denial**

At the time your spouse, William Thompson, died, the eligibility rules for retiree health and group benefits stated that in order for a retiree to be eligible for retiree medical benefits, he must commence payments from the CNA Employees' Retirement Plan (the Retirement Plan). When Mr. Thompson died, he was receiving long term disability and he had not yet begun receiving payments from the Retirement Plan. For this reason he, and therefore, you as his spouse, are not eligible for CNA retiree medical benefits.

A copy of the January 3, 2008 denial is attached hereto as Exhibit B.

26. The section of the Manual dated January 16, 1995 which was in effect at the time of William's retirement stated with respect to retiree medical coverage:

**POLICY**

CNA retirees are eligible to receive various company benefits in addition to the income provided under the CNA Employees' Retirement Plan. To qualify for these additional benefits, CNA retirees must commence payments from the CNA Employees' Retirement Plan within 90 days of termination of employment.

A copy of the relevant Manual page is attached hereto as Exhibit C.

27. On February 15, 2008, Joyce filed a second appeal to CNA to reconsider its declination of benefits.

28. On March 14, 2008, CNA reaffirmed its denial.

## COUNT I
## VIOLATION OF ERISA §1166

29. Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 28 of her Complaint as though fully set forth as Paragraphs 1 through 28 of Count I, and by that reference, incorporates those allegations herein.

30. ERISA §1166 provides in pertinent part:

> (a)(4) the administrator shall notify –
>  (A) in case of a qualifying event described in paragraph (1), (2), (4), or (6) of section 1163 of this title,, any qualified beneficiary with respect to such event . . . of such beneficiary's rights under this subsection.
>
> (c) Rules relating to notification of qualified beneficiaries by plan administrator
>
> For purposes of subsection (a)(4) of this section, any notification shall be made within 14 days . . . of the date on which the administrator is notified . . .

31. Two relevant qualifying events as set out in ERISA §1163 are:

> (1) The death of the covered employee.
> (2) The termination . . . of the covered employee's employment.

32. William's retirement in February, 1996 constitutes a qualifying event under ERISA §1163(2).

33. CNA was William's employer as well as benefit administrator, and, as such, CNA was notified of William's retirement in February, 1996, concurrent with its happening.

34. Neither William nor Joyce received notification of continuing coverage rights under ERISA.

5

35. CNA's failure to provide notification constitutes a violation of ERISA §1166.

36. William's death in February, 1999, constitutes a qualifying event under ERISA §1163(1).

37. Joyce timely notified CNA of William's death.

38. Joyce never received notification of continuing coverage rights under ERISA.

39. CNA's failure to provide notification of continuing coverage rights to Joyce upon William's passing constitutes a violation of ERISA §1166.

40. ERISA §1132(c)(1)(A) provides in pertinent part that:

> Any administrator . . . who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title . . . with respect to a participant or beneficiary, . . . be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant or beneficiary, shall be treated as a separate violation.

41. Joyce is entitled to attorneys fees under ERISA §1132(g)(1), which states:

> In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fees and costs of action to either party.

WHEREFORE, plaintiff prays for judgment against defendant Continental Casualty Company, for the following relief:

    A.    An amount equal to $100.00 per day beginning on the 14th day after William's retirement in February, 1996; and
    B.    An amount equal to $100.00 per day beginning on the 14th day after William's death in February, 1999;
    C.    Pre-judgment interest;
    D.    All attorneys' fees and costs pursuant to ERISA; and
    E.    All other relief this Court shall deem just and proper.

## COUNT II
## VIOLATION OF ERISA §1024

42. Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 41 of her Complaint as though fully set forth as Paragraphs 1 through 41 of Count II, and by that reference, incorporates those allegations herein.

43. In a letter dated January 15, 2008, Joyce requested CNA provide her with a copy of the applicable policy provisions in place on the date of William's retirement in early 1996 as well as copies of any documentation that CNA would have sent to her in 1996 providing explanation of medical benefits. A copy of the January 15, 2008 letter is attached hereto as Exhibit D.

44. ERISA §1024(b)(4) provides that:

> The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description and latest annual report, any terminal report, the bargaining agreement trust agreement, contract or other instrument under which the Plan is established or operated.

45. ERISA §1132(c(1)(B), states that:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . within 30 days after such request may in the Court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

46. CNA failed to provide Joyce with a copy of the requested documents within 30 days in violation of ERISA §§1024 and 1132.

WHEREFORE, plaintiff prays for judgment against defendant Continental Casualty Company, for the following relief:

    A. An amount equal to $100.00 per day from March 15, 2008;
    B. Pre-judgment interest;
    C. All attorneys' fees and costs pursuant to ERISA; and
    D. All other relief this Court shall deem just and proper.

## COUNT III
## BREACH OF FIDUCIARY DUTY

47. Plaintiff realleges each and every allegation set forth in Paragraphs 1 through 46 of her Complaint as though fully set forth as Paragraphs 1 through 46 of Count III, and by that reference, incorporates those allegations herein.

48. ERISA §1104(a)(1)(A), requires a fiduciary to:

> discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expense of administering the plan.

49. ERISA §1104(a)(1)(D), requires a fiduciary to discharge his duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter."

50. CNA breached its fiduciary duty to Joyce in the following manners:

    (1) Failing to notify William and Joyce that William was required to receive pension payments within 90 days of his retirement in order to be eligible for medical coverage under the Plan;

(2) Failing to notify William and Joyce that long-term disability medical coverage was to end in or about August, 1998;

(3) Failing to retroactively apply benefits to Joyce upon her request in October 2007;

(4) Improperly accepting premium payments from Joyce and William throughout William's long-term benefit period;

(5) Failing to provide timely information and documentation upon Joyce's request.

51. Joyce has been damaged as a result of CNA's breach of fiduciary duty.

WHEREFORE, plaintiff prays for judgment against defendant Continental Casualty Company, for the following relief:

    A. An amount equal to the benefits plaintiff has lost;
    B. Pre-judgment interest;
    C. All attorneys' fees and costs pursuant to ERISA; and
    D. All other relief this Court shall deem just and proper.

July 14, 2008                                          Respectfully Submitted:
                                                                  Joyce Thompson

                                                                  By: //s// Jessica A. Jeffries
                                                                       One of her attorneys

Jessica A. Jeffries
Block & Landsman
11 S. LaSalle, Suite 1600
Chicago, Illinois 60603
312-251-1144

- You fail to provide proof of dependency for children over age 19 when requested by the Company.
- Your dependent enters the armed forces of any country.

If you remain employed after age 65 and select Medicare as your primary health benefit payor, CNA coverage for yourself and your dependents terminates.

If you die while an active employee, coverage for your dependents under the CNA Employees' Medical, Dental and Vision Plans remains in force for 12 months following the date of death. The Company pays the full cost of this extended coverage, provided eligible dependents were covered under the Plan on the date of death.

**Coverage Under the Health Plan While On Disability**

Your health coverage (and that of your dependents) may be extended if:

- You have one full year of continuous, full-time service with CNA and you are actively employed by CNA when your coverage would end due to your total disability; or
- You are eligible for early retirement and you are actively employed by CNA when you begin receiving benefits from the Long Term Disability Plan or the CNA Employees' Retirement Plan as a result of a voluntary retirement or an involuntary termination for which severance was paid.

Under the circumstances described above:

- You and your covered dependents will continue to be considered participants in the Plan. You remain eligible for coverage for up to 52 weeks of combined sick, extended sick and Short Term Disability. You pay for your coverage during this 52-week period. In addition, if you continue to be disabled, you and your covered dependents remain eligible for coverage for a period of 29 months following the date the **maximum** Short Term Disability benefits are exhausted, until your total disability ends or the covered person is age 65 and becomes eligible for Medicare, whichever comes first. The Company pays the entire contribution for your coverage during this extension.
- If a female employee or dependent is pregnant on the date her medical coverage terminates, the covered expenses are treated in the same manner as described for other total disabilities.
- Payments will not be made for any dental services or supplies furnished on or after the date health coverage terminates for you or your dependents except under the following four circumstances:
    1. In the case of prosthetic appliances or modification of appliances, if the master impression was taken by a dentist while dental coverage was in force under this Plan, benefits will be payable if the appliance was delivered or installed within two calendar months after the termination of coverage.
    2. In the case of a crown, bridge or inlay or onlay restorations, if the tooth was prepared while coverage was in force under this Plan, benefits will be payable if such crown, bridge or cast restoration was installed within two calendar months after the termination of coverage.
    3. In the case of root canal therapy, if the pulp chamber was opened while coverage was in force under this Plan, benefits will be payable if such root canal therapy is completed within two calendar months after termination of coverage.

HD 49


PLAINTIFF'S EXHIBIT A

**CNA**

333 South Wabash Avenue, Chicago, IL 60604

January 3, 2008

*Teena G. Eisenberg*
Senior Benefits Consultant
CNA HR Benefits
Telephone  312-822-5896
Facsimile   312-822-6247
Internet    teena.eisenberg@cna.com

Ms. Joyce M. Thompson
687 Raintree Ct.
Carol Stream, IL 60188

Re:  **Notice of Adverse Determination on First Appeal for Benefits under the CNA Retiree Health and Group Benefits Plan (the Plan)**

Dear Ms. Thompson:

This is in response to your appeal received by the Plan Administrator on December 4, 2007. In your appeal, you are requesting retiree medical benefits as the spouse of deceased employee, William E. Thompson.

Under the Plan, the Plan Administrator has responsibility for, and has reviewed your appeal. For the reasons described below, the Plan Administrator has denied your request.

**Reason for Denial**

At the time your spouse, William Thompson, died, the eligibility rules for retiree health and group benefits stated that in order for a retiree to be eligible for retiree medical benefits, he must commence payments from the CNA Employees' Retirement Plan (the Retirement Plan). When Mr. Thompson died, he was receiving long term disability and he had not begun receiving payments from the Retirement Plan. For this reason he, and therefore, you as his spouse, are not eligible for CNA retiree medical benefits.

Regarding your claim that he did continue receiving medical benefits, since he was eligible for early retirement and was actively employed by CNA when he began receiving benefits from the Long Term Disability Plan, he and his covered dependents were eligible for continued medical coverage for up to 29 months once he began receiving long term disability benefits.

**Specific references on which the denial is based**

The policy section of the Human Resources Manual entitled "Retiree Benefits" states, "CNA retirees are eligible to receive various company benefits in addition to the income provided under the CNA Employees' Retirement Plan. To qualify for these additional benefits, CNA retirees must commence payments from the CNA Employees' Retirement Plan on the first day of the calendar month following the later of termination of employment, or the date the participant elects to begin retirement benefits. However, this decision must be made within 90 days of termination of employment."

www.cna.com


PLAINTIFF'S EXHIBIT B

The section of the Plan entitled "Coverage Under the Health Plan While On Disability" on page HD50 states, "If you continue to be disabled, you and your covered dependents remain eligible for coverage for a period of 29 months following the date the **maximum** Short Term Disability benefits are exhausted, until your total disability ends or the covered person is age 65 and becomes eligible for Medicare, whichever comes first. "

The applicable sections of the Human Resources Manual and Plan are attached.

### Explanation of the Plan's second level appeal process

If you would like to appeal this denial, you (or your representative) must appeal it within 180 days after you receive this decision, by writing to the CNA Operations Committee at:

CNA Operations Committee
CNA
333 South Wabash Ave., 31S
Chicago, IL 60604

### Additional information you may request to support your claim

You and your representative may receive, upon request and free of charge, reasonable access to and copies of all documents, records or other information relative to your claim.

### Additional information you may provide to support your claim

You may submit any written comments, documents, records and other information relating to the claim to the Operations Committee.

### Decisions of the CNA Operations Committee

The CNA Operations Committee will review this decision and will advise you (or your representative) of its decision within 30 days after it receives your appeal.

The decision by the CNA Operations Committee is final. However, if it is adverse to you, you (or your representative) may file an action for benefits in state or in federal court under Section 502(a) of ERISA. **The Plan requires that you must file such action within 120 days after receiving an adverse benefit determination from the CNA Operations Committee.**

Sincerely,


Teena G. Eisenberg on behalf of the Plan Administrator

Case 1:08-cv-03985   Document 1   Filed 07/14/2008   Page 13 of 16

# HUMAN RESOURCES MANUAL (IG01)        Procedure 3300

## RETIREE BENEFITS                      Page 1
                                         01/16/95

### POLICY

CNA retirees are eligible to receive various company benefits in addition to the income provided under the CNA Employees' Retirement Plan. To qualify for these additional benefits, CNA retirees must commence payments from the CNA Employees' Retirement Plan within 90 days of termination of employment.

### IMPLEMENTATION

#### Insurance Benefits

**Free Life Insurance**—Retiring employees, whose combined years of age and service with CNA equal a minimum of 65, are eligible for company-paid life insurance if they are receiving benefits from the Retirement Plan as a result of voluntary retirement or involuntary termination for which severance was paid. This represents 50% of the noncontributory life insurance coverage which was inforce during active employment.

The life insurance benefit is equal to six times the employee's final monthly salary rounded to the next higher $100 if not a multiple of $100. However, the benefit is never less than $6,000.

**Group Life Insurance Conversion**—Retiring employees may convert any or all of their contributory group life insurance and up to 50% of their noncontributory life insurance which are terminated automatically at retirement. The maximum amount of coverage for an individual policy may not exceed the amount in force at retirement. The premium is the customary rate for the form and amount selected at the employee's retirement age. Contact Employee Benefits at least 31 days prior to the retirement date for specific information.

**CNA Employees' Health Plan**—Retirees and/or their dependents may continue their CNA Employees' Health Plan, or company-sponsored HMO coverage, until age 65 or until they are eligible for Medicare benefits. Retiring employees, whose combined years of age and service with CNA equal a minimum of 65, are eligible for this benefit if they are receiving benefits from the Retirement Plan as a result of voluntary retirement or involuntary termination for which severance was paid.

If payments for the cost of coverage continue after the death of the retiree, coverage will continue for the spouse and qualifying dependents until the spouse or dependents no longer qualify for coverage due to age or Medicare eligibility, thereby terminating the insurance coverage.

A special continuation of coverage under the provisions of COBRA may be available to dependents who cease to meet the definition of dependent. Refer to the Health/Dental section of *Benefits at CNA* for additional information.

#### Other Benefits

**Credit Union**—Employees who are members of the Acme Continental Credit Union at the time of retirement may continue as members and retain full rights and privileges of membership after retirement. Retirees may arrange for direct deposit of Social Security checks into Credit Union


CNA
For All the Commitments You Make®


PLAINTIFF'S
EXHIBIT
e

**HUMAN RESOURCES MANUAL (IG01)**  Procedure 3300

**RETIREE BENEFITS**  Page 2
01/16/95

accounts. Retiring employees should contact the Credit Union to obtain appropriate forms or to discuss other Credit Union services.

**Vacation**—Retiring employees receive payment for the full vacation banks that would have been earned through the end of the year in which they terminate, less any time already taken if they are receiving benefits from the Retirement Plan as a result of voluntary retirement or involuntary termination for which severance was paid.

Retiring employees who do not meet the above conditions should receive payment for vacation time earned through the retirement date, less any time already taken. Payment for unused vacation time should be included in the retiree's final paycheck.

**Retirement Gift**—Retiring employees are eligible to receive a $500 net check as a retirement gift if they are receiving benefits from the Retirement Plan as a result of voluntary retirement or involuntary termination for which severance was paid.

Part-time employees also may qualify for a retirement gift if they qualify for benefits under the Retirement Plan. In this case, a net check in the amount of $250 should be prepared as a retirement gift.

The company absorbs the cost of tax payment on retirement gifts. However, the amount will be reflected on the retiring employee's W-2 form at the end of the year.

The employee's manager verifies the employee's eligibility to receive the retirement gift from Employee Benefits in the Home Office and then completes a Payroll Miscellaneous Check Request (G-110276) 30 days prior to the retirement date. The manager should retain the diary copy of the form and forward the original to Home Office Payroll, 14S for approval. After the request is processed, a check will be sent to the employee's manager for distribution to the employee.

**Retirement Reception**—Full-time employees who qualify for benefits under the Retirement Plan are honored at a reception, dinner or luncheon. The maximum expenditure for the event should not exceed $200. Involuntarily terminated employees who qualify for Retirement Plan benefits are not eligible for a retirement reception.

Part-time employees who qualify for benefits under the Retirement Plan also are honored at a reception. The maximum expenditure for the event should not exceed $100.

A Personal Expense Report (G-80165) should be completed by the manager with receipts attached charging the retiree's cost center. Any money not spent is not reimbursable to the employee.

Joyce M. Thompson
687 Raintree Court
Carol Stream, Illinois 60188

January 15, 2008

C N A Operations Committee
333 South Wabash Ave, 31 S
Chicago, IL 60604
Attn: Teena G. Eisenberg

RE: William E. Thompson- SSN 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
    Deceased Retiree
    Joyce M. Thompson- SSM 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
    Retiree Widow

Ms. Eisenberg:

I have received your correspondence dated January 3, 2008.

I do not agree with this determination, as I do not believe that the Reason for Denial is accurate in their description of my husband's status at the time of his death February 26, 1999. It appears that the committee's determination is based on the document identified as HUMAN RESOURCES MANUAL (IGO1) procedure 3300. The issue date of this document is September 1, 1998. My husband's election for early retirement was in the first quarter of 1996. Please, provide me with a copy of the applicable document from the HUMAN RESOURCES MANUAL that would have been effect at that time.

The benefits were represented to us in the following applicable manner. Barring any exception, after being off of work for one year due to illness an employee would be terminated. The exception with William was that he was eligible for early retirement and elected to do so solely so that he could continue to receive his medical benefits. It was at that time that we started to pay the premium for his medical benefits on a quarterly basis. He was receiving his Long Term Disability. To take his pension at that time he would have been penalized in the amount due to early retirement. Nothing in our dealings with Human Resources at neither that time nor any benefits explanation given to us required that he take his pension to be able to continue his medical benefits. Nothing subsequent to his retirement was received from C N A to advise us that there were any changes that would affect his status. Further, the statement that his medical coverage ended as of August 1, 1998, just is not the case. William continued to receive medical benefits for which we paid the premium until his death in February of 1999. I have a hospital document that supports this fact.

Along with the afore mentioned request for the applicable documents that were in effect in 1996, I would like copies of any documentation from C N A that would


PLAINTIFF'S EXHIBIT D

Page 2.

have been sent to us in 1996 explaining William's benefits that would change my understanding as to how his claim was handled over 10 years ago. I request documentation from C N A that would have advised us of this substantial change in benefits depicted in the document effective September 1, 1998.

Based on the above I would request that the C N A Operations Committee re-examine the facts in this matter.

Sincerely,


Joyce M. Thompson